UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 07-08-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RANDALL THOMAS ZELLARS, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Randall Thomas Zellars' ("Zellars") Motion to Dismiss the Indictment [Record No. 24] and Motion to Revoke the Order of Detention entered by United States Magistrate Judge Robert E. Wier.  [Record No. 17]  A hearing was held on the Motion to Revoke the Order of Detention on March 27, 2007, and on the Motion to Dismiss on April 16, 2007.  Having reviewed the parties' briefs, the testimony presented at the hearings, and the applicable law, the Court will deny both motions.

## I.      Relevant Facts

On July 17, 1973, Zellars plead guilty to "Breaking and Entering an Uninhabited Dwelling at Night" in violation of O.R.C. § 2907.10 and Grand Larceny in violation of O.R.C. § 2907.20.[1] He received a suspended sentence and was put on probation for three years.  Then, on September 22, 1976, the Ohio Court of Common Pleas found that Zellars had violated his probation and

---

[1]      The underlying indictment charged that Zellars "unlawfully, maliciously and forcibly broke and entered Laurel Oaks Development Campus in the night season with the intent to commit larceny" and that he did commit larceny therein.  [Record No. 24, Ex. 1]

-1-

sentenced him to the lesser included penalties of not less than six months nor more than five years under O.R.C. § 2913.02 (Grand Theft) and O.R.C. § 2911.13 (Breaking and Entering). He was released from the Ohio State Penitentiary on parole on March 4, 1977, and finally released on June 26, 1978.

On December 31, 2006, Zellars was arrested after being pulled over for suspicion of driving under the influence. At the time of the arrest, officers claimed to witness Zellars toss a loaded .22 caliber revolver into nearby bushes and attempt to kick a holster under his vehicle. However, Zellars testified at the hearing on April 16, 2007, that the gun merely slipped and slid into the grass, and that the holster fell at his feet. According to Agent Tom Chittum, Zellars later admitted to the possession of the firearm as well as to his prior conviction under O.R.C. § 2907.10. [Record No. 23, p. 7, 9] Then, in an interview on January 5, 2007, Zellars allegedly admitted to possessing additional firearms and ammunition at his residence. He then signed a consent form to allow officers to search his residence, and the officers recovered a handgun, assorted ammunition, a ballistic vest and a holster from the residence.[2]

On January 25, 2007, a federal grand jury returned a three-count indictment charging Zellars with violations of 18 U.S.C. §§ 922(g)(1), 931 and a forfeiture provision pursuant to § 924(d)(1). Section 922(g)(1) makes it unlawful for any person who has been convicted of a crime punishable by a term of imprisonment exceeding one year to possess a firearm. Section 931 prohibits any person from owning or possessing body armor, if that person has been convicted of a felony that is a crime of violence as defined in 18 U.S.C. §16.

---

[2]     The validity of the consent form and the search are the subject of the Defendant's Motion to Suppress. [Record No. 25]

At the time of Zellars' arraignment on March 1, 2007, the government moved for detention. A hearing on this motion was held March 5, 2007, before Magistrate Judge Robert Wier. Zellars did not challenge the validity of his prior conviction under O.R.C. § 2907.10 at that hearing. However, Agent Chittum did testify that Zellars "said that he believed his rights had been restored because he was eligible to vote." [Record No. 23, p. 9]  Magistrate Judge Wier ultimately determined that detention was warranted and entered an Order of Detention and Statement of Findings and Reasons for Detention on March 13, 2007. [*See* Record Nos. 15, 16] The Magistrate Judge specifically noted that "[t]he hearing suggested that Defendant believed his "rights" had been restored, relative to the 1976 felony.  Defendant's deceptive conduct at arrest undercuts that proffered defense."  [Record No. 16, p. 10]

Zellars then filed a Motion to Dismiss the Indictment and a Motion to Revoke the Order of Detention, alleging that his 1973 conviction  for "Breaking and Entering an Uninhabited Dwelling at Night" in violation of O.R.C. § 2907.10 cannot serve as a predicate offense for either § 922(g)(1) or § 931.  In particular, Zellars argues that (1) his rights have been restored pursuant to Ohio Revised Code § 2967.16 (1974); (2) Ohio law does not otherwise prevent him from possessing a firearm under § 2913.14 (2007); and (3) he has not been convicted of a crime of violence as defined in 18 U.S.C. § 16.

## II.    Legal Standards

Generally, "an indictment is constitutionally adequate if it 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (citations omitted).

"However, it is axiomatic that, 'to be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime.'" *Id.* (citations omitted).

In considering motions to dismiss, courts "do not evaluate the evidence upon which the indictment is based." *Id.* at 1080.  According to the Supreme Court, "[r]eview of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it." *United States v. Williams*, 504 U.S. 36, 54-55 (1992) (*citing Costello v. United States*, 350 U.S. 359, 364 (1956)). Therefore, "[a]n indictment valid on its face may not be dismissed on the ground it is based on inadequate or insufficient evidence." *United States v. Jones*, 2006 U.S. Dist. LEXIS 9269 *2 (E.D. Tenn. Feb. 16, 2006) (*citing Williams*, 504 U.S. at 54).

However, under Rule 12 of the Federal Rules of Criminal Procedure, courts may consider any defense "that the court can determine without trial of the general issue." Fed R. Crim. P. 12(b)(2).  According to the Sixth Circuit, "[c]ourts usually say that a motion to dismiss is 'capable of determination' before trial if it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997).  This normally includes "such matters as 'former jeopardy, former conviction, former acquittal, statute of limitations, immunity and lack of jurisdiction.'" *Id.* (*citing United States v. Smith*, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989)).

The Sixth Circuit has further explained that "District Courts may ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *Id.*

However, "[a]llegations of the indictment essential to prove the offense charged and the pleas in answer to such allegations require a trial of the general issue." *Universal Milk Bottle Serv., Inc. v. United States*, 188 F.2d 959, 962 (6th Cir. 1951). Accordingly, "[w]here a defendant's pretrial motion to dismiss requires the court to find facts that make up the elements of the case, a determination which would normally be reserved to the jury at trial, the motion to dismiss should be denied." *Jones*, 2006 U.S. Dist. LEXIS 9269 at * 2-3.

Additionally, this Court must review the Magistrate Judge's Order of Detention *de novo*. *See United States v. Corona*, 2007 U.S. Dist LEXIS 12846, *2 (E.D. Tenn. Feb. 22, 2007) *(citing United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release); *United States v. Koening*, 912 F.2d 1190, 1193 (9th Cir. 1990) (district court is to make its own determination without deference to the magistrate judge's findings)).

### III.    Analysis

Zellars generally argues that he has not been properly charged or detained pending trial because he has not been convicted of "a crime punishable by imprisonment for a term exceeding one year" for purposes of the § 922(g)(1) charge or a "crime of violence" for the § 931 charge.  In response, the government contends that Zellars has been properly charged because his 1973 conviction under Ohio law constitutes a predicate offense for both §§ 922(g)(1) and 931.  The government further asserts that Zellars has been properly detained because the weight of the evidence is only one of the factors to be considered in ruling on a motion for detention and because the Court can consider challenged evidence at detention hearings. [*See* Record No. 20, p. 1 (*citing* 18 U.S.C. § 3142(g)(2))]

-5-

### A.   Zellars' Motion to Dismiss Count 1 of the Indictment

Title 18, Section 922(g)(1), of the United States Code makes it unlawful for any person who has been convicted of a crime punishable by a term of imprisonment exceeding one year to possess a firearm or ammunition. 18 U.S.C. § 922(g)(1) (2007).   In determining whether a defendant has been convicted of "a crime punishable by imprisonment for a term exceeding one year," as defined by the statute, the Court must engage in a three-part inquiry.[3]   First, it must determine if the defendant was convicted a of an offense punishable by a term of imprisonment of more than one year.  Second, it must determine if that conviction has been expunged or set aside, or if the defendant has otherwise been pardoned or had his civil rights restored.  Finally, if the defendant has had his rights restored, the Court must look to the whole of the applicable state law to determine if the defendant is nevertheless prohibited from carrying firearms.  *See United States v. Cassidy*, 899 F.2d 543, 545-46 (6th Cir. 1990); 18 U.S.C. § 921(a)(20).

Here, it is undisputed that Zellars' conviction for  "Breaking and Entering an Uninhabited Dwelling at Night" in violation of O.R.C. § 2907.10 is a conviction for an offense punishable by a term exceeding one year.  *See* O.R.C. § 2907.10 (1972) ("Whosoever violates this section shall be imprisoned not less than one nor more than fifteen years.").  However, Zellars asserts that he has not

---

[3]   Title 18 of the United States Code, section 921(a)(20) defines the term "crime punishable by imprisonment for a term exceeding one year" as follows:

> [w]hat constitutes a conviction for such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction which has been expunged or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this Chapter, unless such pardon, expungement or restoration of civil rights explicitly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

been convicted of a "crime punishable by imprisonment for a term exceeding one year" as defined by 18 U.S.C § 921(a)(20) because his rights were allegedly restored pursuant to O.R.C. § 2967.16 (1974)[4] and he is not otherwise prohibited from possessing a firearm under Ohio law.  In support of this contention, Zellars has submitted an "Institutional disposition sheet" from the "Bureau of Criminal Identification and Investigation" of the "Office of the Attorney General State of Ohio" which lists his "Disposition" as "Final Release." [Record No. 17, Legible Exhibit D].  He has also submitted a "Certificate of Record" from the State of Ohio Department of Rehabilitation and Correction (dated March 17, 2007), certifying that the "dates of incarceration pertaining to Randall Thomas Zellars" include a Final Release on "06-26-78."

Additionally, at the hearing on April 16, 2007, Zellars testified that he had received a certificate restoring his civil rights from the "Parole Board" of the State of Ohio.  Zellars further testified that this certificate restored all his rights, but did not mention firearms on the face of the document.  However, Zellars testified that he is unable to produce the certificate because it was

---

[4]      The 1974 version O.R.C. § 2967.16 provided in relevant part,

> When a paroled prisoner has *faithfully performed* the conditions and obligations of his parole and has obeyed the rules and regulations adopted by the adult parole authority that apply to him, the authority upon the recommendation of the superintendent of parole supervision *may* enter upon its minutes a final release and thereupon shall issue to the paroled prisoner a *certificate of final release, but no such release shall be granted earlier than one year after the prisoner is released from the institution on parole* unless his maximum sentence has expired prior thereto, and in the case of a prisoner whose minimum sentence is life imprisonment, no such release shall be granted earlier than five years after the prisoner is released from the institution on parol.

> A prisoner who has served the maximum term of his sentence or who has been granted his final release by the adult parole authority shall be restored to the rights and privileges forfeited by his conviction. OHIO REV. CODE ANN. § 2967.16(A) (1974) (emphasis added).

*United States v. Chenowith*, 459 F.3d 635, 637 (5th Cir. 2006).

destroyed in a fire in 1992.  According to Zellars, he attempted to replace the certificate by calling the State of Ohio, but was unsuccessful in this effort.

In *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990), the Sixth Circuit developed a two-part test to determine whether a convicted felon's civil rights had been restored so as to eliminate the prior conviction from consideration. *Cassidy*, 899 F.2d at 546.  It indicated that, as an initial matter, a court must look beyond the certificate to the whole of state law to determine if the defendant's civil rights have been restored.  *See Cassidy*, 899 F.2d at 546.  Then, if the defendant's rights have been restored, the court must look again to the whole of state law to determine whether he is otherwise restricted from possessing a firearm.  *Id*.  The Sixth Circuit further noted that an effective "restoration of civil rights" under § 921(a)(20) requires "a restoration of more than a *de minimus* quantity of civil rights." *Id*. at 549.  The court concluded that the restoration of the right to vote, right to hold public office, and the right to serve on a jury was sufficient to constitute a "restoration of civil rights" as contemplated by 18 U.S.C. § 921(a)(20).  *Id*. at 550.  However, because the defendant in that case was expressly restricted from possessing firearms under Section 2923.13 of the Ohio Revised Code, he had been convicted of a "crime punishable by imprisonment for a term exceeding one year," and was properly charged under 18 U.S.C. § 922(g).

Under Ohio law, a convicted felon's right to vote is automatically restored pursuant to O.R.C. § 2961.01.  However, the restoration of the right to serve on a jury and hold public office under the 1974 version of O.R.C. 2967.16 was a discretionary decision which required that the adult parole authority enter a "final release" upon its minutes.  *See United States v. Chenowith*, 459 F.3d 635, 638-39 (5th Cir. 2006); *see also United States v. Bost*, 87 F.3d 1333 (D.C. Cir. 1996).  In

*United States v. Chenowith*, the Fifth Circuit addressed the application of O.R.C. § 2967.16, holding that:

> Chenowith's civil rights were restored by his final-release-and-restoration certificate, not by operation of law. Although the Government contends his rights were restored automatically, his certificate was granted, as discussed, under the discretionary authority provided by § 2967.16. As quoted earlier, it states, in part: '[T]he [Ohio Adult Parole Authority,] upon the recommendation of the superintendent of parole supervision[,] may enter . . . a final release and thereupon shall issue to the paroled prisoner a certificate of final release'. Chenowith's restoration of rights was not automatic.

*Chenowith*, 459 F.3d at 638-39. Accordingly, to eliminate a prior conviction from consideration for purposes of § 922(g)(1), a defendant must show that the Ohio Adult Parole Authority exercised its *discretionary* authority to enter a final release and thereby restore his civil rights.

In the present case, Zellars has testified that he received a certificate restoring all his civil rights under Ohio law, but has been unable to produce any documentation from the appropriate authority to support his claim. Instead, he submitted documentation from the State of Ohio stating that records are only retained for ten years and that Zellars was finally released from "incarceration" on June 26, 1978. [Record No. 41, Ex. 1] The government contends that Zellars' rights have not been restored, and that his actions at the time of his arrest indicate that he did not believe his rights had been restored. The government further argues that even if all of his rights had been restored, Zellars is still prohibited from possessing a firearm under Ohio law because his conviction for breaking and entering a school at night is a felony offense of violence due to the risk of serious physical harm to late nights students and custodians at the school.[5]

---

[5]     Under Ohio law, a person is prohibited from carrying or possessing a firearm if that person "has been convicted of any felony offense of violence." O.R.C. § 2923.13(A)(2). The definition of an "offense of violence" includes a list of enumerated statutes, as well as the following:

> (b) A violation of an existing or former municipal ordinance or law of this or any other state

As discussed previously, the Adult Parole Authority's authority to enter a final release and restore a convicted felon's civil rights is discretionary, not automatic like the restoration of the right to vote under O.R.C. 2961.01.  *See Bost*, 87 F.3d 1333.  Here, the parties have been unable to produce any documentation that conclusively shows whether Zellars' rights have been restored.  In all other cases in which courts has considered a defendant's restoration of rights under O.R.C. 2967.16, the defendants have produced the requisite certificate.  *See Cassidy*, 899 F.2d 543; *Chenowith*, 459 F.3d at 638-39; *Bost*, 87 F.3d 1333.  Because O.R.C § 2961.01operates automatically to restore a convicted felon's right to vote, it is clear that Zellars' right to vote has been restored.  *See* O.R.C. § 2961.01.  However, the restoration of that right, by itself, is insufficient to be considered a restoration of rights under 921(a)(20).  *See Cassidy*, 899 F.2d at 549 (noting that an effective "restoration of civil rights" under § 921(a)(20) requires "a restoration of more than a *de minimus* quantity of civil rights").

It is also clear that, based on the information currently before the Court, the undersigned is unable to determine whether Zellars' prior conviction under O.R.C. 2907.10 is a "felony offense of violence" under Ohio law.  *See* O.R.C. § 2901.01.  The conviction occurred over thirty years ago,

---

or the United States, substantially equivalent to any section, division, or offense listed in division (A)(9)(a) of this section;

(c) An offense, other than a traffic offense, under an existing or former municipal ordinance or law of this or any other state or the United States, committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons.

O.R.C. § 2901.01(A)(9).

The statute under which Zellars was convicted, "Breaking and Entering an Uninhabited Dwelling at Night" in violation of O.R.C. § 2907.10, is not included in the specific enumerated list.  However, this is not dispositive of the issue, as that statute has been repealed.  *See State of Ohio v. Harris*, 1981 Ohio App. LEXIS 11263 *4-5 (Ct. App. Ohio Feb. 11, 1981) (holding that the court is unable to determine whether a conviction under repealed O.R.C. § 2907.10 is a "offense of violence" where the court is not aware of the specific facts of the underlying conviction).

-10-

and the statute has since been repealed.  The Court has located only one case in which the Ohio state

courts[6] have considered whether a defendant's prior conviction under O.R.C. 2907.10 constitutes

a "felony offense of violence."   In *State of Ohio v. Harris*, 1981 Ohio App. LEXIS 11263 *4-5 (Ct.

App. Ohio Feb. 11, 1981), the Ohio Court of Appeals noted that:

> The state introduced evidence that the defendant had been convicted of R.C. 2907.10
> in 1957.  The defense argued that that section had been repealed and the present
> analogous crime would be R.C. 2911.13 which is not an offense of violence under
> R.C. 2901.01(I).  We believe it is difficult to ascertain if the defendant's conviction
> was a felony of violence where the court is not made aware of the actual conduct and
> especially where the conviction itself is a plea-bargain to a lesser offense.

*Harris*, 1981 Ohio App. LEXIS at *4-5.  Like the defendant in *Harris*, Zellars pled guilty to O.R.C.

2907.10, and the Court is unable to determine whether the circumstances surrounding that conviction

would be considered a "felony offense of violence" under Ohio law.[7]

---

[6]       The government has also provided an unpublished decision from the United States District Court for
the Northern District of Ohio in which that court determined that O.R.C. § 2907.10 was a felony offense of
violence under Ohio law in the context of a civil suit for a federal firearms license.  *See Schwable Enterprises,
Inc. v. The Bureau of Alcohol, Tobacco, and Firearms, United States Department of the Treasury*, Case No.
3:94-CV-7513 (N.D. Ohio Jan. 27, 1995) (Katz, J.).  In that case, the court held that, even though the
petitioner had his rights restored, he was still prohibited from possessing firearms under federal law because
he was expressly prohibited from possessing a firearm under O.R.C. § 2923.13.  The court followed the Sixth
Circuit's holding in *United States v. Bentley* that Ohio's current breaking and entering statute is a violent
felony and concluded that it was bound by that decision.  However, the court in *Schwable* failed to note that
*Bentley* held that Ohio's current breaking and entering statute was a violent felony for purposes of § 924(e),
not § 922(g), which requires the court to look to state law.  Accordingly, although the undersigned finds the
reasoning in *Schwable* relevant to the determination of whether § 2907.10 is a violent felony under federal
law, it is not persuaded by its application to the § 922(g)(1) analysis.

[7]       Like the defendant in *Harris*, Zellars also argues that O.R.C. § 2907.10 is "substantially equivalent"
to § 2911.13 based on the legislative history of § 2901.01. [Record No. 41, p.7] However, Zellars' argument
is inconsistent with the supporting documents attached to his memorandum which state that he was sentenced
to the "lesser included penalt[y]" under § 2911.13, rather than the "substantially equivalent" offense. [Record
No. 41, Ex. 2] In fact, the Ohio Court's determination that § 2911.13 was a lesser included offense of §
2907.10 indicates that the statutes are not substantially equivalent because a conviction under § 2907.10
would require an additional element beyond those required for a § 2911.13 conviction.

Although Rule 12 of the Federal Rules of Criminal Procedure permits pretrial consideration of any defense "the court can determine without a trial of the general issue," it does not permit the Court to engage in a "pretrial test of the government's evidence." *Jones*, 2006 U.S. Dist LEXIS 9269 * 12. In the present case, Zellars is challenging the validity of his prior conviction, which is an essential element of a § 922(g)(1) charge. And because "[a]llegations of the indictment essential to prove the offense charged . . . require a trial of the general issue," they should not be decided by a motion to dismiss. *See Universal Milk Bottle Serv.*, 188 F.2d at 962. The indictment in this case is valid on its face,[8] and a constitutionally adequate indictment "may not be dismissed on the ground that it is based on inadequate or insufficient evidence." *Jones*, 2006 U.S. Dist LEXIS 9269 * 2 (*citing Williams*, 504 U.S. at 54).

In *United States v. Jones*, the Eastern District of Tennessee addressed a case similar to the one presently before the Court. There, the defendant claimed that his rights had been restored under Tennessee law, but the government claimed he was still prohibited from carrying firearms because he was prohibited from obtaining a handgun permit. The court noted that both parties agreed that the defendant had been convicted of the prior felony and determined that the defendants' motion to

---

[8]   The Indictment in this case tracks the language of the statute and charges that:

> On or about December 31, 2006, in Clay County, in the Eastern District of Kentucky, RANDALL THOMAS ZELLARS, having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce the following firearm and ammunition:
>
> > 1. Heritage, Model Rough Rider, .22 caliber; and
> > 2. assorted ammunition,
>
> all in violation of 18 U.S.C. § 922(g)(1).

[Record No. 1]

-12-

dismiss should be denied because the Court was unwilling to hold a "pretrial test" of the government's evidence. *Jones*, 2006 U.S. Dist LEXIS 9269 * 12. The court further held that,

> Defendant may very well be correct in arguing his 1971 conviction does not qualify as a predicate conviction under § 922(g)(1) based on certain alleged facts. However, in making this argument Defendant is asking the Court to find facts that make up the elements of the crime. To sustain a conviction under § 922(g)(1), the Government must prove beyond a reasonable doubt Defendant was previously convicted of a crime punishable by imprisonment for a term exceeding one year. *See* 18 U.S.C. § 922(g)(1). To the extent that Defendant's motion is a request for this Court to hold a pretrial test of the Government's evidence, the Court declines to hold such a pretrial test. As a matter of public policy, "criminal cases generally should not be attenuated by preliminary or 'mini-' trials concerning . . . the competency of the evidence . . ." *Craft*, 105 F.3d at 1127.

*Id.* at *12.

As in *Jones*, Zellars may be correct that his 1973 conviction does not constitute a "crime punishable by imprisonment for a term exceeding one year." However, to make this determination, the Court would be forced to make a factual finding concerning an essential element of the § 922(g) charge for which the government has the burden of proof at trial. As previously noted, "[w]here a defendant's pretrial motion to dismiss requires the court to find facts that make up the elements of the case, a determination which would normally be reserved to the jury at trial, the motion to dismiss should be denied." *Id.* at * 2-3. Accordingly, because the Indictment is valid on its face and because a challenge to the sufficiency of the government's evidence should not be decided on a motion to dismiss, the Court will deny Zellars' Motion to Dismiss Count 1 of the Indictment

### B.    Zellars' Motion to Dismiss Count 2 of the Indictment

Zellars also contends that Count 2 of the Indictment should be dismissed because his 1973 conviction does not constitute a "crime of violence" under federal law. Title 18, Section 931, of the United States Code makes it unlawful "for a person to purchase, own, or possess body armor, if that

person had been convicted of a felony that is . . . a crime of violence (as defined in section 16)."  18

U.S.C. § 931.  Section 16 defines a "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.  According to the Sixth Circuit, "Congress intended courts to look to the nature of

the offense, rather than to the facts of each individual commission of the offense, in deciding

whether a 'crime of violence' has occurred."  *United States v. Johnson*, 704 F. Supp. 1398, 1400 (6th

Cir. 1988) (citations omitted).  Therefore, "[e]ach generic offense must be categorized as either a

'crime of violence' or not a crime of violence; there cannot be a justification for ad hoc classification

of criminal activity."  *Id*.

Zellars was convicted of "Breaking and entering uninhabited dwelling at night" in violation

of O.R.C. § 2907.10.[9]  He contends that this conviction should not be considered a conviction for

a "crime of violence" under federal law because the Sixth Circuit has held that the current "Breaking

---

[9]     The 1972 version of O.R.C. § 2907.10 provided:

> No person shall in the night season maliciously and forcibly break and enter, or attempt to break and enter an uninhabited dwelling house, uninhabited house trailer, or a kitchen, smokehouse, shop, office, storehouse, warehouse, malthouse, stillhouse, mill, pottery, factory, watercraft, schoolhouse, church, meeting house, barn, stable, railway car, car factory, station house, hall, or other building, or attempt to break and enter an inhabited dwelling house or inhabited house trailer with intent to steal property of any value, or with intent to commit a felony.

> Whoever violates this section shall be imprisoned not less than one nor more than fifteen years.

O.R.C. § 2907.10 (1972).

and Entering" statute, O.R.C. § 2911.13, is not a violent felony for purposes of 18 U.S.C. § 924(e).[10]

[*See* Record No. 24, p. 7 (*citing United States v. Bentley*, 29 F.3d 1073, 1077 (6th Cir. 1994)).]

However, Zellars' argument misinterprets the court's holding in *Bentley*.

In *Bentley*, the Sixth Circuit analyzed the two *distinct* prongs of Ohio's current breaking and

entering statute, O.R.C. §§ 2911.13(A) and 2911.13(B), and determined that O.R.C. § 2911.13(A)

is a violent felony, while O.R.C. § 2911.13(B) is not. *Bentley*, 29 F.3d at 1077. Section 2911.13

of the Ohio Revised Code provides that,

> (A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.
>
> (B) No person shall trespass on the land or premises of another, with purpose to commit a felony.
>
> (C) Whoever violates this section is guilty of breaking and entering, a felony of the fifth degree.

O.R.C. § 2911.13 (2007). In considering whether a conviction under this statute constitutes a violent

felony, the Sixth Circuit reasoned that,

---

[10]     Under Section 924(e), a "violent felony" is defined as follows:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that–
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(B). This definition is similar, but not identical to the definition of a "crime of violence" under § 16. Section 16 is a broader definition, as it includes the threat or use of force against "person or property of another." However, "burglary" is specifically included in § 924(e), but not § 16.

From the statute's face, it is obvious that one cannot break and enter in violation of § 2911.13(A) without unlawfully entering or remaining in a building or structure. It follows that violating § 2911.13(A) is a "generic burglary" as defined in *Taylor*. However, it is equally clear from the statute's face that one can break and enter in violation of § 2911.13(B) without unlawfully entering or remaining in a building or structure. It follows that violating § 2911.13(B) is not a "generic burglary" as defined in *Taylor*.

Furthermore, one can certainly trespass on land with the intent to commit a felony without attempting or threatening to use any form of physical force. Thus, a violation § 2911.13(B) does not qualify as a violent felony under the first prong of § 924(e)(2)(B). Finally, from the Legislative Committee Note it is clear that breaking and entering, without more, does not "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii). Thus, a violation of § 2911.13(B) is not a violent felony under the second prong of § 924(e)(2)(B).

*Bentley*, 29 F.3d at 1077.

In the present case, Zellars was convicted of "maliciously and forcibly break[ing] and enter[ing]" an unoccupied dwelling at night with the intent to commit larceny therein. *See* O.R.C. § 2907.10; Record No. 17, Ex. A. This offense is clearly more analogous to § 2911.13(A) because it requires more than just breaking and entering; that is, it requires the use of force, the intent to commit a felony and that one "unlawfully enter[] or remain[] in a building or structure." *See Bentley*, 29 F.3d at 1077; *United States v. Roberts*, 1996 U.S. App. LEXIS 17286, * 6-7 (6th Cir. 1996) (noting that "this Ohio statute directly mirrors the elements of 'generic burglary' set out by the Supreme Court in Taylor: 1) unlawful entry or remaining in a structure, and 2) intent to commit a crime therein.")

Moreover, the Sixth Circuit has explicitly held that O.R.C. § 2907.10, the exact statute under which Zellars was convicted, is a violent felony for purposes of § 924(e). In an unpublished decision in *United States v. Roberts*, 1996 U.S. App. LEXIS 17286, * 6-7 (6th Cir. 1996), the Sixth Circuit found that the 1968 version of the statute "directly mirrors the elements of 'generic burglary'

-16-

set out by the Supreme Court in *Taylor*." *Id*. at *7.  The court further noted that § 2907.10 requires the "1) unlawful entry or remaining in a structure, and 2) intent to commit a felony therein," and that it was unlike statutes which only required "'entering without breaking,' a crime which did not contain the required element of unlawful entry enunciated by the Supreme Court in *Taylor*." *Id*. The court concluded that "even though the Ohio statute under which the Defendant was convicted in 1968 is not specifically called burglary, the conviction qualifies as burglary for purposes of § 924(e) and, consequently, § 4B1.4 enhancements." *Id*. at *8.

Additionally, the government has cited an unpublished decision from the Northern District of Ohio in which that court held that § 2907.10 is a violent felony under federal law.[11] *See Schwable Enterprises, Inc. v. The Bureau of Alcohol, Tobacco, and Firearms, United States Department of the Treasury*, Case No. 3:94-CV-7513 (N.D. Ohio Jan. 27, 1995) (Katz, J.).  In *Schwable*, the petitioner challenged the denial of his application for a federal firearms license, alleging that his conviction under O.R.C. § 2907.10 did not constitute a predicate offense within the meaning of 18 U.S.C. § 922(g).  The court followed the Sixth Circuit's holding in *Bentley* and held that § 2907.10 was "substantially equivalent" to § 2911.13(A) and, thus, was a violent felony under federal law. *Id*. at 13.

Finally, Zellars argues that the particular circumstances surrounding his conviction do not demonstrate the requisite force or violence for a "crime of violence" under § 16.  In support, he relies on the Fifth Circuit's holding in *United States v. Landeros-Gonzalez*, 262 F.3d 424, 426 (5th Cir. 2001) for the premise that "force" is "synonymous with destructive or violent force." [Record

---

[11]     As noted previously, the court in *Schwable* further concluded that § 2907.10 was a "felony offense of violence" under state law due to the Sixth Circuit's analysis in *Bentley*.

No. 24, p.6] Zellars contends that the state court indictment in this case does not demonstrate that any such force was used and that he "merely entered the grounds of the school to accomplish the theft charged in Count II of that indictment."

Contrary to Zellars' argument, this Court need not make a factual finding of the specific circumstances when considering a former conviction under § 931. As previously noted, "Congress intended courts to look to the nature of the offense, rather than to the facts of each individual commission of the offense, in deciding whether a 'crime of violence' has occurred." *Johnson*, 704 F. Supp. 1398, 1400 (6th Cir. 1988) (citations omitted). *See also United States v. Frias-Trujillo*, 9 F.3d 875 (10th Cir. 1993) (finding that a conviction under Texas' burglary statute was a "crime of violence" despite the fact that "nobody was at home, no property was damaged, and nobody was injured"); *United States v. Rodriguez-Guzman*, 56 F.3d 18, 20 (5th Cir. 1995) (noting that section 16 only requires a substantial risk that the application of physical force to person or property may occur).

As the Supreme Court noted recently in considering a prior conviction under § 924(e)'s residual provision,

> we "'look only to the fact of conviction and the statutory definition of the prior offense,'" and do not generally consider the "particular facts disclosed by the record of conviction." *Shepard v. United States*, 544 U.S. 13, 17, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (*quoting Taylor*, 495 U.S., at 602, 110 S. Ct. 2143, 109 L. Ed. 2d 607 ). That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.

*James v. United States*, 2007 U.S. LEXIS 4337 *19-20 (Apr. 18, 2007).

In *James*, the Supreme Court held that Florida's attempted burglary statute was a crime of violence for purposes of § 924(e) because it presented a serious potential risk of physical injury to

-18-

another. *Id*. at *20.  The Court examined the elements of the statute, which included "overt conduct directed toward unlawfully entering or remaining in a dwelling, with the intent to commit a felony therein" and concluded that the risk of danger to a person was just as substantial with an attempted burglary as with a completed burglary.  *Id*.  The Court noted that every Court of Appeals that has addressed a similar attempted burglary statute has concluded that it was a crime of violence under federal law.  *See id*. at *24 n.3.

Here, the Sixth Circuit has already determined that O.R.C. § 2907.10 contains the generic elements of burglary under federal law.  *See Roberts*,  1996 U.S. App. LEXIS 17286, * 6-7.  And because "the burglary of a nonresidential building or of a vehicle often involves the application of destructive physical force to the property of another," a conviction under § 2907.10 falls under the residual category of 18 U.S.C. 16(b) for offenses that involve the "substantial risk that physical force against the . . . property of another may be used."  *Rodriguez-Guzma*n, 56 F.3d at 20; *see also* O.R.C. § 2907.10 (stating that "[n]o person shall in the night season maliciously and *forcibly* break and enter . . .")  Accordingly, the Court finds that a prior conviction under O.R.C. § 2907.10 is a "crime of violence" for purposes of § 931.  Therefore, Zellars' Motion to Dismiss Count 2 of the Indictment will be denied.

### C.    Zellars' Motion to Revoke the Order of Detention

In support of his Motion to Revoke the Magistrate Judge's Order of Detention, Zellars again generally claims that he has not been properly charged under Count 1 of the Indictment and that the United States' request for detention constitutes an abuse of discretion.  [Record No. 17]  At the detention hearing on March 26, 2007, Zellars' counsel further explained that the United States'

request for detention constitutes an abuse of discretion because of the "questionable nature" of the § 922 count.

The Court has already determined, *infra*, that Zellars has been properly charged under Count 1 of the Indictment. Therefore, his Motion to Revoke the Order of Detention will be construed as a challenge to the weight of the evidence. Pursuant to 18 U.S.C. § 3142(f)(1)(E), the government may request detention in a case that involves "any felony . . . that involves the possession or use of a firearm or destructive device." 18 U.S.C. § 3142(f)(1)(E). In the present case, Zellars is charged with possessing a firearm in violation of § 922(g)(1). The government moved for detention at Zellars' arraignment, and a detention hearing was held March 5, 2007. At the hearing, Agent Tom Chittum described the circumstances of Zellars' arrest, as well as other activities of the Defendant, including alleged drug activity, allegations that the Defendant regularly carries a firearm, and ties to local law enforcement. Zellars presented testimony concerning his family and community ties and disputed the allegations that he routinely carries a firearm and is involved in illegal drug activity.

In his Statement of Findings and Reasons for Detention, Magistrate Judge Wier thoroughly reviewed the information before the Court and concluded that detention was warranted because "no release condition or combination of such conditions will reasonably assure the safety of any other person and the community." [Record No. 16, p.6] The Magistrate Judge noted that the government conceded that Zellars poses a low flight risk, but concluded that "[i]t is danger, not flight, that warrants detention." [Record No. 16, p.10]

Under 18 U.S.C. § 3142(g), a court must consider a number of factors in determining whether a set of conditions of release exist "that will reasonably assure the appearance of that person

as required and the safety of any other person and the community."  18 U.S.C. § 3142(g).  One of

these factors is the weight of the evidence against the person.  18 U.S.C. § 3142(g)(2).  However,

as the United States notes in its response in opposition to the motion to revoke, a Court may consider

challenged evidence in detention hearings.  18 U.S.C. § 3142(f) ("The rules concerning admissibility

of evidence in criminal trials do not apply to the presentation and consideration of information at

the [detention] hearing.")

Here, the Court does not find that Zellars' challenge to the prior conviction substantially

alters the weight of the evidence or the overall analysis under § 3142.  Zellars is charged with being

a convicted felon in possession of a firearm.  As Magistrate Judge Wier noted, "[t]his plainly is a

pro-detention factor per the Act."  At the time of the arrest, Zellars was pulled over for suspicion of

driving under the influence, and both the firearm and a holster either fell or were discarded from his

person as soon as he stepped out of the vehicle.  The firearm appeared to have been discharged based

on the spent rounds.  Also, although Zellars eventually raised a challenge to the legitimacy of his

prior conviction under § 922, he did not initially challenge it at the detention hearing before Judge

Wier.  In fact, Judge Wier specifically noted that "[t]he hearing suggested that Defendant believed

his 'rights' had been restored, relative to the 1976 felony.  Defendant's deceptive conduct at arrest

undercuts that proffered defense."  Likewise, this Court has now determined that Zellars is properly

charged under Count 1 and that he has been convicted of a crime of violence to sustain the § 931

charge.

Magistrate Judge Wier also concluded that the history and characteristics of the Defendant

weighed in favor of detention, despite his presentation of evidence concerning family and

community ties.  According to the Magistrate Judge,

"Past conduct," "alcohol abuse," and "criminal history" are specific § 3142(g) factors. Here, Defendant's repetitive alcohol abuse and DUI conduct clearly establish a significant community danger. Defendant has been arrested for DUI four times since October of 2005, and he has three convictions pertaining to that conduct. Most significantly for bail purposes in this Court, Defendant has ignored mandatory restrictions on his conduct related to those prosecutions. Thus, the public record indicates that in June of 2006, authorities revoked Defendant's license for twelve months. Despite that restriction, Defendant was arrested for DUI in both August of 2006 and December of 2006. Further, in November of 2006, authorities in Clay County revoked Defendant's license for twelve months related to a June 2006 DUI arrest. D efendant, under two separate revocation restrictions, still drove and drove drunk on December 31, 2006, the date of the arrest producing the firearms at issue.

Predicted compliance with conditions really is the key, as the Court evaluates potential release. If every defendant were perfectly compliant, pretrial detention would be unnecessary. Here, Defendant has demonstrated by contemporaneous and unambiguous conduct that he has no respect for behavioral restrictions directly regulating danger, even if imposed by a court and legal system. Based on Defendant's casual and repeated violation of license restrictions, the Court has no confidence in the efficacy of any conditions it might impose related to danger. Just as Defendant possessed firearms and a ballistic vest despite statutory restrictions to the contrary, Defendant continued to drive, and drive impaired, despite direct prohibitions as to his licensure.

[Record No. 16, p.8-9]

This Court is also troubled by Zellars' repeated actions involving danger to the community, especially his possession of the firearm and holster at the time of his arrest for driving under the influence. Although Zellars testified at the hearing on April 16, 2007, that he did not attempt to dispose of the weapon and the holster at the time of his arrest, it is clear that they were on his person while he was driving and intoxicated. Further, the Court is troubled by the significant amounts of ammunition, the additional firearm, and the bullet-proof vest that were found in Zellars' apartment. Although these items are the subject of Zellars' pending motion to suppress, the Court can consider such challenged evidence in the context of a detention hearing. 18 U.S.C. § 3142(f).

-22-

After reviewing the relevant materials *de novo*, including the testimony presented at the detention hearing before the Magistrate Judge, the findings of the Magistrate Judge related to release, and the additional evidence presented at the hearings held on March 27 and April 16, 2007, the Court has determined that there is no set of conditions that will reasonably assure the safety of any other person and the community.

Zellars' possession of the firearm and holster at the time of his arrest, as well as the significant amount of additional firearm-related devices in his apartment, the testimony concerning the alleged drug activities and Zellars' habitual carrying of a firearm indicate that he is a danger to the community. Additionally, his repeated defiance of restrictions on his license and on his ability to carry firearms demonstrate an additional danger. Therefore, Zellars must detained pending trial. This determination is based on a careful consideration of the factors contained in 18 U.S.C. § 3142 (g), including the nature and circumstances of the offense charged, the weight of the evidence, the history and characteristics of the Defendant, and nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. 18 U.S.C. § 3142(g) (2007).

### IV.    CONCLUSION

The Court finds that Zellars has been properly charged under Counts I and II of the Indictment and that his challenge to the weight of the government's evidence as to Count 1 of the Indictment does not alter the Court's finding that he must be detained pending trial under 18 U.S.C. § 3142. Accordingly, it is hereby

**ORDERED** that Zellars' Motion to Dismiss the Indictment [Record No. 24] and Motion to Revoke the Order of Detention [Record No. 17] are **DENIED**.

This 1st day of May, 2007.

-23-



Signed By:

_Danny C. Reeves_  DCR

**United States District Judge**