UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                                                         )<br>        Plaintiff,                              )<br>                                                         )<br>V.                                                    )<br>                                                         )<br>RANDALL THOMAS ZELLARS,    )<br>                                                         )<br>        Defendant.                           ) | Criminal Action No. 6: 07-08-DCR<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

*** *** *** ***

This matter is pending for consideration of Defendant Randall Thomas Zellars' ("Zellars") Motion to Suppress the evidence and statements obtained as a result of a custodial interrogation on January 5, 2007. Having reviewed the relevant materials, including the parties' briefs, the hearing transcript, and the findings and recommendation of the Magistrate Judge, the Court will deny Zellars' motion.

**I.     RELEVANT FACTS**

On December 31, 2006, Zellars was arrested for suspicion of driving under the influence. At the time of his arrest, he allegedly possessed a holster and a .22 caliber revolver. He was subsequently taken to the Clay County Detention Center and charged with operating a motor vehicle while under the influence of intoxicating substances.

On January 5, 2007, Assistant Police Chief Jeff Culver of the Manchester City Police Department removed Zellars from the Clay County Detention Center and transported him to the Manchester City Police Department for questioning by federal agents. During the course of

-1-

interrogation, Zellars allegedly admitted to possessing the firearm at the time of his arrest, to a prior felony conviction, and to possessing an additional firearm and ammunition at his apartment. He also allegedly signed two forms, one waiving his *Miranda* rights, and one consenting to the search of his apartment.

On that same date, officers searched Zellars' apartment, yielding an additional 9mm firearm, assorted ammunition, and a ballistic vest. Thereafter, on January 25, 2007, a grand jury returned a three count indictment, charging Zellars with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), illegally possessing body armor in violation of 18 U.S.C. § 931, and a forfeiture provision pursuant to 18 U.S.C. § 924. The validity of the waiver forms, the statements allegedly made in the interrogation, and the subsequent search are the subject of Zellars' Motion to Suppress.

United States Magistrate Judge Robert E. Wier held a hearing on the pending motion on March 30, 2007. At the hearing, Agent Thomas Chittum, Office Jeff Culver, Agent Timothy Briggs, and the Defendant testified about the events that occurred on January 5, 2007. In short, Zellars claims that he repeatedly asked for a lawyer, that he was coerced into signing the consent to search form, and that he never intended to sign a form waiving his *Miranda* rights. In contrast, all three officers testified that Zellars never asked for a lawyer, and Agents Chittum and Briggs testified that they did not coerce Zellars into signing the forms and that he was read each of the forms prior to signing them. Officer Culver testified that he transported the Defendant and that Zellars did not ask for a lawyer during that time, but that he could not recall much else about the interrogation on January 5th.

The parties filed supplemental briefs based on the facts presented at the hearing, and the Magistrate Judge issued his Report of Recommendation on April 26, 2007. The Magistrate Judge found Zellars testimony to be "incredible" and "fantastic" and recommended that this Court deny the Motion to Suppress. In doing so, the Magistrate Judge credited the testimony of the law enforcement officers and found that testimony to be consistent with the waiver forms and other documentation admitted into evidence at the hearing.

Subsequently, Zellars filed his objections to the Magistrate Judge's Report and Recommendation, based solely on the Magistrate Judge's determinations concerning the credibility of Officer Culver and the Defendant. Specifically, Zellars claims that Officer Culver's testimony regarding the transport from the Clay County Detention Center was not credible. Zellars further contends that, although he "misstated some matters, and, on cross-examination, exaggerated with respect to other issues," his testimony about his request for an attorney and to be returned to jail was clear and consistent. Therefore, he contends that the government has not met its burden of demonstrating that Zellars' waiver of his rights was knowing, voluntary and intelligent.

## II.  LEGAL ANALYSIS

### A.  Waiver of *Miranda* Rights

It is well-established that "incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his or her *Miranda* rights." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (*citing Stansbury v. California*, 511 U.S. 318, 322 (1994)). After a suspect has been advised of those rights, he or she may waive

them, provided the waiver is "voluntary, knowing and intelligent, under the totality of circumstances." *United States v. Walls*, 116 F. App'x 713, 717 (6th Cir. 2004). According to the Supreme Court, "[t]he voluntariness of a waiver of this privilege has always depended on the absence of police overreaching." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

The government has the burden of proving a valid waiver by a preponderance of the evidence. *United States v. Jones*, 205 F. App'x 327, 334 (6th Cir. 2006); *Connelly*, 479 U.S. at 168. "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (*quoting Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

In the present case, Zellars objects to the Magistrate Judge's findings concerning the credibility of the testimony of the Defendant and Officer Culver. Officer Culver testified that he could not recall much of the events on January 5, 2007, except that Zellars did not request counsel or to be returned to jail.[1] According to Zellars' objections, this testimony is dispositive of the issue because it "was not credible." [Record No. 55, p.2] Zellars further contends that,

---

[1] On cross-examination, Officer Culver stated as follows:

> Q: He asked you where you were taking him. You told him that there were some agents who wanted to talk to him. He said he wanted his lawyer there and you said he didn't need any lawyer. And he said "I want to go back to jail."
>
> A. That is incorrect.
>
> Q. All right. You don't remember any of that or you're saying it didn't happen?
>
> A. That did not happen.

[Record No. 43, p. 32-33]

-4-

although he "misstated some matters, and, on cross examination, exaggerated with respect to other issues," his testimony about his request for an attorney and to be returned to jail was clear and consistent.

Contrary to Zellars' argument, the Magistrate Judge found Zellars testimony concerning his alleged requests for counsel during the transport to be completely "incredible." The Magistrate Judge further found that "Zellars' fantastic description as to the counsel issues colors the Court's assessment of credibility in other contexts." [Record No. 52, p. 13] In reaching this conclusion, the Magistrate Judge specifically noted that,

> [t]he Court does not credit Zellars's version. His testimony reflects a fanciful and grossly exaggerated description that strikes the Court as incredible. As one example: Zellars insisted that he demanded counsel almost immediately. He then reported that he separately demanded counsel eight or nine times, before upping that estimate to twelve times. Finally, he described every word "out of my mouth" during the interview as involving invocation of his right to counsel. The claim is far-fetched and seemed to grow progressively more shocking over the course of the hearing.
>
> Indeed, Zellars also inaccurately contended that Officer Culver knew, by January 5, that Defendant's counsel already was Stephan Charles. Zellars indicated that Culver denied him counsel by specific reference to Attorney Charles, and Zellars testified that Charles already had formally appeared in state court for him on the DUI charge. The docket sheet contradicts that assertion, showing that Attorney Charles did not appear until well after the January 5 events. This undercuts the credibility of Defendant.
>
> Further, to believe Zellars's version, the Court also must accept that four separate members of law enforcement, from four separate federal or state agencies, determined to engage in rank deprivation of clearly established constitutional rights. Certainly, conduct by law enforcement deserves close scrutiny, particularly in the context of constitutional rights. However, the Court simply does not believe, based on the testimony, that the Zellars version is true in this case.

[Record No. 52, p.11-12] The Magistrate Judge concluded that, based on the totality of circumstances, the United States had proved by a preponderance of the evidence that Zellars knowingly and voluntarily waived his *Miranda* rights.

Additionally, the testimony of Officer Culver does not lead this Court to a different conclusion. Officer Culver clearly and emphatically testified that Zellars did not request an attorney during the transport from the Clay County Detention Center to the Manchester City Police Department. [Record No. 43, p. 32-33] According to Officer Culver, he simply told Zellars "that there were some officers who wanted to speak with him," and Zellars did not, at any time, request that his attorney be present. The record shows that Zellars was on a first-name basis with Officer Culver. As the Magistrate Judge noted, Zellars claimed that Officer Culver made specific reference to Stephan Charles and that he had already appeared in state court on his behalf. However, the state court record shows that Stephen Charles had not yet made an appearance as of the date in question. Based on the testimony presented and Zellars' repeated "exaggerations," this Court also credits Officer Culver's testimony concerning the events over that of the Defendant.

A district court must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, when a magistrate's findings and recommendations are based on an evaluation of the credibility of the witnesses, a district court is not required to rehear the testimony to make such a determination of the issues. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). Further, "[c]redibility determinations of the magistrate judge who personally listened to the testimony of

a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Brown*, 2007 U.S. Dist. Lexis 33521 *3 (E.D. Tenn. May 7, 2007).

After reviewing the record *de novo*, the Court finds that there is no reason to question the Magistrate Judge's determinations of credibility. The Magistrate Judge made clear and specific findings concerning the relevant testimony, and those findings are supported by the record. Zellars' testimony concerning the transport and his alleged repeated attempts to have an attorney present are not supported by the documents or the state court record. In contrast, Officer Culver's testimony concerning the transport was clear and consistent, and his testimony is supported by the fact that Zellars' signed the *Miranda* waiver at the start of the interrogation.[2]

Finally, Zellars contends that the government has not met its burden of showing by a preponderance of the evidence that he knowingly, intelligently, and voluntarily waived his rights because the government failed to record the interrogation, citing dicta in *United States v. Thornton*, 177 F. Supp. 2d 625 (E.D. Mich. 2001). The Court finds that this arguments is without merit. As several courts have repeatedly stated, "[w]hatever the merits of the policy arguments in favor of requiring the recording of interrogations may be, it is clear that such recording is not mandated by the United States Constitution." *United States v. Tykarsky*, 446 F.3d 458, 477(3rd Cir. 2006); *see also United States v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004) (declining to extend *Miranda* to require the electronic recording of all interrogations);

---

[2] The record shows that the Defendant was removed from the Clay County Detention Center at 9:30 a.m. on January 5, 2007, and that the waiver of rights was signed and dated on January 5, 2007, at 10:20 a.m., less than one hour later.

*United States v. Smith-Balthier*, 424 F.3d 913, 925-26 (9th Cir. 2005) (re-affirming the court's holding in *United States v. Coades*, 549 F.2d 1303 (9th Cir. 1977), that electronic recording of post-arrest statements is not required); *United States v. Yunis*, 859 F.2d 953, 960-61 (D.C. Cir. 1988) (noting that consideration of whether an interrogation is recorded is "of dubious relevance to the validity of [the defendant's] waiver" and that "there is no constitutional requirements that confessions be recorded by any particular means").

Here, the government presented the "independently and collectively consistent" testimony of Agents Chittum and Briggs concerning the validity of the *Miranda* waiver. The Magistrate Judge found that,

> the interrogation and consent scenarios did not occur in the manner Zellars described. Instead, the Court believes that the agents conducted the interview in a manner that was not unduly threatening or coercive. Although authorities discussed the potential charges against Zellars, an analysis of the legal predicament of a defendant, and ways to improve that predicament, is not inherently improper and would seem to be a common interview topic. . . .
>
> The custodial interview was less than two hours long, not an inherently unreasonable length of detention. Further, Agent Chittum testified that Zellars agreed to waive his Miranda rights and to consent to the search on the first request for each. The Court credits the agents' description of the overall tone of the interview as "cordial" and "conversational," despite Zellars's contrary story. The threat of prosecution may have induced Defendant to cry, relative to the effect on his daughter, but the Court does not believe overreaching or intimidation by law enforcement improperly caused that result, or most importantly, infected the waivers.

[Record No. 52, p. 13-14]. This Court is in complete agreement with the Magistrate Judge's conclusions regarding the validity of the *Miranda* waiver. Therefore, Zellars' motion to suppress the statements and evidence obtained as a result of the January 5, 2007, interrogation will be denied on these grounds.

### B.     Consent to Search

Zellars has not specifically objected to any of the Magistrate Judge's findings or legal analysis concerning the consent to search. In his Report and Recommendation, the Magistrate Judge concluded that, "[b]ased on the totality of the circumstances, and the applicable standards, the Court finds by a preponderance of the evidence that the United States has proven a knowing and voluntary Miranda waiver and by the same standard has proven, through clear and positive testimony, that Zellars gave the relevant consent to search freely and voluntarily." [Record No. 52, p. 15]

Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's proposed findings of fact and recommendations to which objection is made, 28 U.S.C. § 636(b)(1)(c), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court has reviewed the evidence presented *de novo* and agrees with the Magistrate Judge's conclusion that Zellars knowingly and voluntarily consented to the search of his apartment.

### III.    CONCLUSION

Having reviewed the record *de novo* in light of the Defendant's objections, 28 U.S.C. § 636(b)(1)(C), and being otherwise sufficiently advised, the Court concurs in the Report and Recommendation of the Magistrate Judge. [Record No. 52] Accordingly, it is hereby **ORDERED** that:

1. The Defendant's Motion to Suppress [Record No. 25] is **DENIED**;

2. United States Magistrate Judge Robert E. Wier's Report and Recommendation [Record No. 52] is **ADOPTED** and **INCORPORATED** by reference; and

3. The Defendant's objections [Record No. 55] to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

This 24th day of May, 2007.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge